**SO ORDERED.**

**SIGNED this 12th day of October, 2021.**



_____
LENA MANSORI JAMES
UNITED STATES BANKRUPTCY JUDGE

---

## UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## WINSTON-SALEM DIVISION

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| Tamara Lynn Swink, | ) | Case No. 19-51012 |
| | ) | |
| Debtor. | ) | |
| —————————————————— | ) | |
| | ) | |
| Tamara Lynn Swink, | ) | |
| | ) | |
| Plaintiff, | ) | Ad. Proc. No. 20-06193 |
| | ) | |
| v. | ) | |
| | ) | |
| Federal National Mortgage Association, | ) | |
| Seterus, Inc., and Nationstar Mortgage | ) | |
| LLC d/b/a Mr. Cooper, | ) | |
| | ) | |
| Defendants. | ) | |
| —————————————————— | ) | |

### ORDER AND OPINION
#### GRANTING IN PART AND DENYING IN PART
#### DEFENDANTS' MOTION TO DISMISS COMPLAINT

THIS ADVERSARY PROCEEDING comes before the Court upon the

amended motion to dismiss and supporting brief filed by defendants Federal

National Mortgage Association ("Fannie Mae"), Nationstar Mortgage LLC d/b/a Mr.

Cooper ("Mr. Cooper"), and Seterus, Inc. (collectively, the "Defendants"), seeking to

1

dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), as made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7012, for failure to state a claim upon which relief can be granted. After consideration of the record and for the reasons stated herein, the Court will grant in part and deny in part the Defendants' amended motion to dismiss.

PROCEDURAL HISTORY

On December 22, 2020, Tamara Swink (the "Plaintiff") initiated this adversary proceeding by filing a complaint against the Defendants (Docket No. 1, the "Complaint").[1] In addition to objecting to the proof of claim filed by Mr. Cooper in the underlying bankruptcy case, the Plaintiff also seeks damages for violations of (1) the discharge injunction, (2) the automatic stay, (3) the Fair Debt Collection Practices Act ("FDCPA"), (4) the Real Estate Settlement Procedures Act ("RESPA"), and (5) N.C. Gen. Stat. § 45, as well as damages stemming from (6) breach of contract and (7) tortious interference with contract.

After a Court-provided extension of time, the Defendants filed a motion to dismiss, followed by the instant amended motion to dismiss on April 13, 2021 (Docket No. 31, 32, the "Motion"). The Plaintiff filed a brief in opposition to the Motion (Docket No. 39) and the Defendants filed a reply brief (Docket No. 40). Following an unsuccessful attempt at mediation (Docket No. 44), the Court scheduled a hearing on September 1, 2021, at which Kristen Nardone appeared on behalf of the Plaintiff, and Joseph Vonnegut and Claire Dickerhoff appeared on

---

[1] Unless otherwise indicated, the record citations refer to Adversary Proceeding No. 20-06193, rather than the underlying bankruptcy case, Case No. 19-51012.

behalf of the Defendants. Kathryn Bringle also appeared in her capacity as chapter 13 trustee for the Plaintiff's underlying bankruptcy case. After hearing arguments from each side as to the merits of the Motion, the Court took the matter under advisement.

## STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires dismissal of a complaint if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In evaluating a motion to dismiss, a court must "test the sufficiency of the complaint to see if it alleges a claim for which relief can be granted." *Dolgaleva v. Va. Beach City Pub. Sch.,* 364 F. App'x 820, 825 (4th Cir. 2010). A motion under Rule 12(b)(6) should be granted if the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). Accordingly, the factual allegations must "be enough to raise a right to relief above the speculative level" and advance the plaintiff's claim "across the line from conceivable to plausible." *Id.* at 555, 570. As explained in *Ashcroft v. Iqbal,*

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

556 U.S. 662, 678 (2009) (cleaned up).

To determine plausibility, all well-pleaded facts set forth in the complaint are taken as true and viewed in a light most favorable to the plaintiff; however, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement" will not constitute well-pleaded facts necessary to withstand a motion to dismiss. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. Assuming the complaint meets the plausibility standard, the plaintiff is not required "to also rebut other possible explanations for the conduct alleged." 2 MOORE'S FEDERAL PRACTICE § 12.34(1)(b) (2019); *accord Houck v. Substitute Trustee Servs.*, 791 F.3d 473, 484 (4th Cir. 2015) (holding that "a plaintiff need not demonstrate … that alternative explanations are less likely" to survive a motion to dismiss) (quoting *Twombly*, 550 U.S. at 570)). On the other hand, dismissal is proper under Rule 12(b)(6) "if the complaint lacks an allegation regarding an element necessary to obtain relief." 2 MOORE'S FEDERAL PRACTICE § 12.34(4)(a) (2019); *see also EEOC v. PBM Graphics Inc.*, 877 F. Supp. 2d 334, 343 (M.D.N.C. 2012) (finding a plaintiff must allege facts sufficient to state each element of his claim) (citing *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 764–65 (4th Cir. 2003)).

The Court also takes judicial notice of pertinent docket entries and papers within this adversary proceeding and the underlying bankruptcy case. *See Anderson*

*v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141 n.1 (4th Cir. 1990) (holding that a bankruptcy court may "properly take judicial notice of its own records"); *see also Brown v. Ocwen Loan Servicing, LLC*, No. 14-3454, 2015 WL 5008763, at *1 n.3 (D. Md. Aug. 20, 2015), *aff'd*, 639 F. App'x. 200 (4th Cir. 2016) (taking judicial notice of docket entries in other cases for purposes of evaluating a Rule 12(b)(6) motion to dismiss).

### FACTUAL BACKGROUND AND ALLEGATIONS

The dispute between the Plaintiff and her mortgage servicers spans several years and two bankruptcy cases. On November 14, 2013, the Plaintiff filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code (Case No. 13-51412, the "Prior Bankruptcy Case"). The Plaintiff was the owner of record on real property located at 124 North Cotton Avenue, Albemarle, North Carolina (the "Property"). In connection with the purchase of the Property, the Plaintiff executed a promissory note in the original amount of $59,000.00 with First Franklin Financial (Docket No. 1, Ex. B, the "Note"), which was secured by a deed of trust on the Property (Docket No. 1, Ex. C, the "Deed of Trust"). On January 24, 2007, the Plaintiff transferred an undivided half interest in the Property to her mother, Lois Elaine McLeod, while retaining the other half interest (Docket No. 1, ¶ 21). On August 13, 2009, the Plaintiff and First Franklin entered into a loan modification agreement in the amount of $65,082.23 with a term of 480 months (Docket No. 1, Ex. G, the "Loan Modification").

The Deed of Trust, Note, and Loan Modification set the conditions under which the lender may apply fees and charges related to the Plaintiff's late or incomplete mortgage payments. The Deed of Trust allows the lender to return any payment or partial payment if it is insufficient to bring the loan current and permits the lender to charge fees for services in connection with the borrower's default, such as attorney's fees, property inspection, and valuation fees (Docket No. 1, ¶ 72). Among its listed provisions, paragraph 6 of the Note[2] provides that the lender can assess late charges if mortgage payments are not received within 15 days of the due date or if the Plaintiff does not pay the full amount of each monthly payment (Docket No. 1, ¶ 69). The Deed of Trust also provides that, if the borrower fails to maintain required insurance, the lender may obtain insurance coverage at its option and at the borrower's expense (Docket No. 1, ¶ 72).

The Plaintiff's chapter 13 plan in the Prior Bankruptcy Case, which was confirmed on March 11, 2016, provided that creditors holding liens on the Property would continue to receive ongoing mortgage payments directly from Lois McLeod (Case No. 13-51412, Docket No. 14, the "Confirmed Plan"). The Confirmed Plan also incorporated the terms and provisions of the Standing Order dated February 24, 2012, which provided that, "[u]nless the court orders otherwise, an order granting a discharge in the case shall be a determination that all prepetition and postpetition defaults have been cured and the account is current and reinstated on the original

---

[2] The Plaintiff erroneously refers to a non-existent "Paragraph 6" within the Loan Modification, rather than paragraph 6 of the Note, the latter of which contains the provisions for assessing late charges that the Plaintiff discusses in paragraph 69 of the Complaint.

payment schedule under the note and security statement as if no default had ever occurred." *Standing Order Regarding Terms and Provisions Available for Incorporation into Chapter 13 Confirmation Orders*, at ¶ (B)(7) (Bankr. M.D.N.C. Feb. 24, 2012) (the "2012 Standing Order").

Several months after plan confirmation, on November 7, 2016, Fannie Mae filed proof of claim # 10-1, asserting a secured mortgage debt of $59,533.95 and listing Seterus as the servicer of its mortgage. The proof of claim did not indicate any default or arrears in connection with the mortgage.

Over the course of the Prior Bankruptcy Case, Fannie Mae filed two separate motions for relief from stay asserting, in both instances, that the Debtor was in default on her post-petition mortgage payments (Case No. 13-51412, Docket No. 43, 54). On both occasions, Fannie Mae's attorney later withdrew the motions after stating the loan had been brought current, with the more recent withdrawal representing the Debtor was current on mortgage payments through August 2018 (Case No. 13-51412, Docket No. 52, 60). The Debtor later moved for entry of discharge, which was granted without objection on February 6, 2019 (Case No. 13-51412, Docket No. 83, 84). The Court entered its standard discharge order and, pursuant to the 2012 Standing Order, the mortgage account was determined to be current as of February 6, 2019.

The Plaintiff alleges that she made each monthly payment after Fannie Mae's attorney represented the account was current in August 2018 (Docket No. 1, ¶¶ 99–121), yet the Defendants—including Mr. Cooper, which replaced Seterus as

7

the mortgage servicer on March 1, 2019 (Docket No. 1, ¶ 122)—misapplied her mortgage payments, assessed unwarranted fees, sent communications that erroneously overstated the total balance of her account, and referred the Property to foreclosure (Docket No. 1, ¶¶ 123–147). Despite the Plaintiff's attempts to prompt the Defendants to correct the record, refund the fees, and end the foreclosure process, the Defendants pressed forward, and a foreclosure sale was held on September 25, 2019 (Docket No 1, ¶¶ 155–169). The Plaintiff asserts that, two days later, the Defendants inaccurately informed the Plaintiff's insurance carrier, NC Grange, that a foreclosure sale had concluded, the Property was moved to "Real Estate Owned" status, and the Plaintiff no longer held an ownership interest in the Property (Docket No. 1, ¶¶ 192–206). As a result, the Plaintiff alleges her NC Grange insurance was cancelled and never restored, leaving her unable to obtain a new insurance policy for six months and, when she eventually did secure new coverage, it was provided at a prohibitively higher cost than her previous policy (Docket No. 1, ¶¶ 207–221).

The Debtor filed her current bankruptcy case two days after the foreclosure sale, on September 27, 2019 (Case No. 19-51012, the "Current Bankruptcy Case"). Defendant Mr. Cooper filed proof of claim # 5-1, asserting a secured claim in the amount of $58,708.34 (the "Proof of Claim"), which the Plaintiff alleges is incorrect (Docket No. 1, ¶¶ 173, 633). Specifically, the Plaintiff argues that payments made by the Plaintiff were improperly credited, do not align with the representations of the Defendants' attorney in the prior case, and contain an inflated escrow based on

the Defendants' cancellation of the Plaintiff's prior insurance on the Property (Docket No. 1, ¶¶ 634–645). The Plaintiff further asserts that the Defendants' actions forced her to file the Current Bankruptcy Case, in which the Defendants continue to misrepresent the amount owed on the mortgage through the Proof of Claim.

The Plaintiff filed the Complaint to commence this adversary proceeding on December 22, 2020, asserting that the Defendants committed violations of the discharge injunction under 11 U.S.C. § 524(i), the automatic stay under 11 U.S.C. § 362, the FDCPA, RESPA, and N.C. Gen. Stat. Chapter 45. The Complaint also objects to the Proof of Claim in the Current Bankruptcy Case and asserts claims against the Defendants for breach of contract and tortious interference with a contract. The Plaintiff seeks actual damages, including recoupment of wrongly assessed fees and charges, emotional distress damages, and the reasonable attorneys' fees, costs, and expenses incurred in connection with filing the Complaint (Docket No. 1, ¶¶ 312, 315, 339–40, 456–64, 672, 718, 729–739). The Plaintiff also requests the imposition of punitive sanctions against the Defendant in an amount "appropriate and necessary to deter similar conduct in the future" (Docket No. 1, ¶¶ 317–18, 739).

## DISCUSSION

The Defendants seek to dismiss the entirety of the Plaintiff's claims, channeling their legal arguments into four categories. First, the Defendants argue that the Plaintiff fails to state a claim for relief under § 524(i) because the mortgage

debt at issue was not discharged, the Complaint and attached documents demonstrate that the Plaintiff failed to make all payments required by the Confirmed Plan, and, in any event, the Defendants correctly applied all tendered payments (Docket No. 32, pp. 7–14). Second, the Defendants assert that the Complaint fails to state a claim under § 362 because the facts as alleged by the Plaintiff do not include an act to collect the mortgage loan debt by the Defendants prior to entry of discharge in the Prior Bankruptcy Case (Docket No. 32, p. 15). Third, the Defendants argue the Plaintiff's objection to the Proof of Claim fails because the Plaintiff has not come forward with plausible facts or evidence to rebut the presumptive validity of the Proof of Claim (Docket No. 32, p. 17). Fourth, the Defendants urge the Court to dismiss the Plaintiff's remaining claims for breach of contract, tortious interference with contract, vicarious liability, and violations of the FDCPA, RESPA, and N.C. Gen. Stat. § 45, under two rationales: (a) the Court does not have jurisdiction to hear the claims because those claims did not arise in and were not related to the Plaintiff's bankruptcy case and, alternatively, (b) the Plaintiff fails to allege specific damages she sustained as a result of the purported violations (Docket No. 32, pp. 19–20).

     i.   <u>Count One: Violation of the Section 524(a)(2) Discharge Injunction</u>

The Plaintiff alleges the Defendants violated § 524(i) by misapplying the Plaintiff's mortgage payments during and after the Prior Bankruptcy Case, and continuing to assert, through statements and the foreclosure proceeding, an unjustified and inflated mortgage account balance. The Plaintiff asks the Court to

impose contempt sanctions for this ongoing misapplication of payments as a violation of the discharge injunction of § 524(a)(2).

Section 105 of the Bankruptcy Code allows a bankruptcy court to hold a creditor in civil contempt, and impose contempt sanctions, for violating the discharge injunction of § 524. *See Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019); *see also Bradley v. Fina (In re Fina)*, 550 F. App'x 150, 154 (4th Cir. 2014). Of importance here, the Bankruptcy Code requires mortgage creditors to properly apply any payments received on those debts during the chapter 13 case as part of a confirmed plan. A creditor's failure to do so is treated as a violation of the discharge injunction under § 524(i), which provides:

> The willful failure of a creditor to credit payments received under a plan confirmed under this title, unless the order confirming a plan is revoked, the plan is in default, or the creditor has not received payments required to be made under the plan in the manner required by the plan (including crediting the amounts required under the plan), shall constitute a violation of an injunction under subsection (a)(2) if the act of the creditor to collect and failure to credit payments in the manner required by the plan caused material injury to the debtor.

11 U.S.C. § 524(i).

The Defendants maintain that the Plaintiff fails to establish the required elements for a cause of action under § 524(i) and urge dismissal for three reasons: (a) the mortgage loan debt was not discharged in the Prior Bankruptcy Case; (b) the facts alleged by the Plaintiff establish that payments were properly credited to the mortgage loan; and (c) relief under § 524(i) is unavailable because the documents attached to the Complaint show that Plaintiff did not tender all payments to the Defendants required by the Confirmed Plan (Docket No. 32, pp. 7–14).

a)       *Section 524(i) Covers Long-Term Loans Not Discharged in Prior Bankruptcy*

The Court may easily dispense with the Defendants' position regarding the applicability of § 524(i) to long-term mortgage debts that are not discharged. The Defendants argue that, "[s]ince the Mortgage Loan debt was not discharged in Plaintiff's [Prior Bankruptcy Case], the discharge injunction of § 524(a)(2) does not apply which is a prerequisite to bringing a proceeding pursuant to § 524(i)" (Docket No. 32, p. 13). The Court has previously explained, in extensive detail, its findings on the applicability of § 524(i) to long-term debts that are not discharged at the end of a bankruptcy plan. *See Carnegie v. Nationstar Mortg., LLC (In re Carnegie)*, 621 B.R. 392, 403–409 (Bankr. M.D.N.C. 2020). There is no need to repeat that analysis and the Court, in line with the majority of courts to consider the question,[3] finds that § 524(i) applies, and indeed was designed for long-term debts that are not discharged at the end of a plan. *See id.* at 408 (noting the "clear consensus in the commentary and caselaw that [§ 524(i)] was added to address issues with long-term mortgage debt.") Accordingly, the long-term nature of the Defendants' mortgage debt in the Prior Bankruptcy Case does not foreclose the Plaintiff's cause of action under § 524(i).

---

[3] *See e.g.*, *Santander Consumer, USA, Inc. v. Houlik (In re Houlik)*, 481 B.R. 661 (10th Cir. B.A.P. 2012); *Bivens v. NewRez LLC (In re Bivens)*, 625 B.R. 843 (Bankr. M.D.N.C. 2021); *Williams v. CitiFinancial Servicing LLC (In re Williams)*, 612 B.R. 682 (Bankr. M.D.N.C. 2020); *In re Ferris*, 611 B.R. 701 (Bankr. M.D. Fla. 2019); *Ridley v. M&T Bank (In re Ridley)*, 572 B.R. 352 (Bankr. E.D. Okla. 2017); *In re Franklin*, No. 09-13399, 2017 WL 3701214 (Bankr. D.N.H. Aug. 24, 2017); *Scott v. Caliber Home Loans, Inc. (In re Scott)*, Case No. 09-11123, Adv. No. 14-01040, 2015 WL 9986691 (Bankr. N.D. Okla. July 28, 2015); *Mattox v. Wells Fargo, NA (In re Mattox)*, Case No. 07-51925, Adv. No. 10-05041, 2011 WL 3626762 (Bankr. E.D. Ky. Aug. 17, 2011); *Galloway v. EMC Mortg. Corp. (In re Galloway)*, Case No. 05-13504, Adv. No. 09-01124, 2010 WL 364336 (Bankr. N.D. Miss. Jan. 29, 2010); *Myles v. Wells Fargo Bank, N.A. (In re Myles)*, 395 B.R. 599 (Bankr. M.D. La. 2008).

b)    *Plaintiff Sufficiently Alleges the Defendants Failed to Property Credit Payments during the Prior Bankruptcy Case*

The Defendants aver that the facts alleged within the Complaint and the documents attached show the Plaintiff failed to tender all mortgage payments required under the Confirmed Plan and that the Defendants correctly applied all payments that were in fact received. Relatedly, the Defendants question whether § 524(i) is even applicable if the facts and documents demonstrate the Plaintiff did not make all required payments.

The Defendants seek to use the payment histories and communications attached to the Complaint as evidence that the Plaintiff's mortgage was persistently in default and that all payments received by the Defendants were correctly applied. The inherent problem with this position is that the Plaintiff's claims are based, in large measure, on the numerous errors she alleges are contained within those very attached documents. For instance, the Defendants assert that Exhibit GG, which is the Proof of Claim in the Current Bankruptcy Case, "establishes that Plaintiff was behind on her payments during the course of the Prior [Bankruptcy] Case and even at the time of discharge" (Docket No. 32, p. 10). The Plaintiff, however, did not attach the Proof of Claim as reliable evidence of the payment history on the mortgage loan. In fact, the Plaintiff alleges that the Proof of Claim and its attached ledger "is incorrect on multiple relevant factors, including but not limited to the total amount owed, the arrearage owed, escrow deficiency, and projected escrow" (Docket No. 1, ¶¶ 633, 634). It would be antithetical to the purpose of a Rule 12(b)(6) motion to dismiss, where all well-pleaded facts set forth in the Complaint

13

are taken as true and viewed in a light most favorable to the Plaintiff, to use attached documents, the inaccuracy of which the Plaintiff points to as the basis for her claims, as evidence in favor of dismissal.

Further, the Plaintiff alleges the Defendants misapplied payments after August 2018, which is when Fannie Mae withdrew its second motion for relief from stay. In that withdrawal, Fannie Mae's attorney stated that the "[l]oan has been brought post-petition current through August 2018" (Case No. 13-51412, Docket No. 60). Given that the mortgage was not in default as of the petition date in the Prior Bankruptcy Case (Docket No. 1, ¶ 78), the withdrawal statement issued by Fannie Mae's attorney suggests the mortgage loan was completely current at least as of August 2018.

The Defendants attempt to diminish the import of the withdrawal statement, suggesting that this allegation "is the only indication" that the mortgage loan was current at the time (Docket No. 32, p. 8). While statements and arguments of counsel are not evidence, they may be binding judicial admissions on the represented party. *See, e.g.*, *Minter v. Wells Fargo Bank, N.A.*, 762 F.3d 339, 347 (4th Cir. 2014) ("A lawyer's statements may constitute a binding admission of a party if the statements are deliberate, clear, and unambiguous."); *1899 Holdings, LLC v. 1899 Ltd. Liability Co.*, 568 F. App'x. 219, 225 (4th Cir. 2014) (same); *In re Halko*, 203 B.R. 668, 674 (Bankr. N.D. Ill., 1996) (noting that representations of counsel are "not only extremely important to and binding upon the client" but also to the Court in which he serves as an officer). As recently explained by the District

14

of Delaware, "[b]ecause an attorney is a party's 'authorized legal agent,' his or her statements are party admissions[,]" provided the statement, which can include those made in briefs or filings, "(1) is made during a judicial proceeding, (2) deals with a fact, and (3) is deliberate, clear, and unambiguous." *Packett Capital v. Syke Mineral Partners, LLC (In re Skye Mineral Partners, LLC)*, No. 18-2008, 2020 WL 6709892, at *5 n.2 (D. Del. Nov. 16, 2020) (internal citations omitted). Here, viewing the statement made by Fannie Mae's attorney in withdrawing the second relief from stay motion in the light most favorable to the Plaintiff, the statement appears to deal with a fact, i.e., the Plaintiff's mortgage balance, and to be deliberate, clear, and unambiguous in its representation that the Plaintiff's account was current through August 2018. Accordingly, the Court finds the statement by Fannie Mae's attorney is sufficient for purposes of Rule 12(b)(6) to establish that the loan was current through August 2018.

The Plaintiff then alleges, month-by-month, that she made all required payments on the mortgage loan beginning with September 2018 (Docket No. 1, ¶¶ 99–121). The Plaintiff details the drafts on the Plaintiff's bank account made by the Defendants each month from September 2018 to March 2019, when Mr. Cooper began servicing the account and no longer automatically deducted the Plaintiff's mortgage payment (Docket No. 1, ¶¶ 122–23, 129). The Plaintiff alleges that, beginning in March 2019, Mr. Cooper erroneously asserted the loan was in default, refused to accept any payments less than the inflated default amount, and eventually, referred the Property to foreclosure (Docket No. 1, ¶¶ 123–49). When

15

viewed in conjunction with the withdrawal statement of Fannie Mae's attorney, the Court finds the Plaintiff has stated claim for relief under § 524(i) for purposes of Rule 12(b)(6).

The Defendants' alternative arguments to the contrary are unavailing. The Defendants assert that, even if there was an initial error in reflecting the account was current as of August 2018, the Defendants promptly took steps to correct that error when alerted to it by the Plaintiff's attorney (Docket No. 32, p. 11). Specifically, the Defendants point to a communication sent by Mr. Cooper on June 18, 2019, in which Mr. Cooper acknowledged that "there was an error by the previous servicer" and, to comport with the representation by Fannie Mae's counsel that the mortgage loan was post-petition current as of August 2018, committed to advancing the account by 10 installments (Docket No. 1, Ex. DDD). As alleged by the Plaintiff, however, and as supported by examination of the Proof of Claim, "[a]dvancing the account by ten (10) installment payments was not equivalent to noting the account current through August 2018 then applying payments made subsequently pursuant to the terms of the Note and Deed of Trust" (Docket No. 1, ¶ 452). The mortgage balance was not shown to be current after the advancement of the ten installment payments and the Defendants continued to pursue the foreclosure. To that end, Mr. Cooper submitted an Affidavit of Default at the foreclosure hearing on June 18, 2019, the same day it responded to the Plaintiff's inquiry. In that Affidavit of Default, Mr. Cooper's representative stated the Plaintiff "failed to pay the monthly installments for the months of July, 2018 and subsequent

months" (Docket No. 1, Ex. BB1). The Court does not find persuasive the Defendants' position that its corrective measures forestall the Plaintiff's claim under § 524(i).

Lastly, the Defendants point the Court to the language of the statute, arguing that a willful misapplication of payments cannot be found "where the creditor has not received payments required to be made under the plan in the manner required by the plan (including crediting the amounts required under the plan)[.]" 11 U.S.C. § 524(i). The Defendants contend that "the overwhelming evidence produced by Plaintiff that the Mortgage Loan was in default at the time of the discharge" shows the Plaintiff did not tender all payments to the Defendants as required by the Confirmed Plan and, consequently, that § 524(i) is not applicable. First, as the Court has already found, the combination of Fannie Mae's representation to the Court that the mortgage balance was current through August 2018 and the Plaintiff's pleadings in the Complaint that all payments beginning in September 2018 were tendered to the Defendants is sufficient to demonstrate, for purposes of this Rule 12(b)(6) motion to dismiss, that the Defendants received all payments required to be made under the Confirmed Plan. Second, the Defendants' contention that the Plaintiff failed to make all mortgage payments is belied by the discharge order entered in the Prior Bankruptcy Case, which, according to the 2012 Standing Order, determined the mortgage account to be current "as if no default had ever occurred" as of February 6, 2019.

For these reasons, the Court finds the Plaintiff has stated claim for relief under § 524(i).

ii. <u>Count Two: Violation of the Automatic Stay</u>

The Plaintiff also seeks sanctions against the Defendants under § 362(k) for violations of the automatic stay. Under that provision, "an individual injured by any willful violation of a stay … shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k). As such, to establish a claim, the Plaintiff must allege that a violation occurred, that the violation was committed willfully, and that the violation caused actual damages. *Bivens v. NewRez LLC (In re Bivens)*, 625 B.R. 843, 848 (Bankr. M.D.N.C. 2021) (citing *Williams v. CitiFinancial Servicing LLC (In re Williams)*, 612 B.R. 682, 691 (Bankr. M.D.N.C. 2020)). To sustain an action under § 362(k), the Plaintiff must demonstrate an act to collect occurred while the automatic stay was in effect. *Carnegie*, 621 B.R. at 412–13.

As this Court explained in *Carnegie*, while a defendant could be liable for the willful failure to credit payments occurring while the automatic stay was in place, the plaintiff must also allege that the defendant undertook an act to collect during the pendency of the stay. In the Motion, the Defendants claim that this cause of action must be dismissed because the Plaintiff has not plausibly pleaded that Mr. Cooper undertook any act to collect the mortgage loan debt prior to entry of discharge in the Prior Bankruptcy Case (Docket No. 32, p. 15). The Plaintiff alleges that the Defendants' failure to correctly credit payments received pursuant to the

Confirmed Plan during the duration of the Prior Bankruptcy Case constitutes a violation of the automatic stay. The Plaintiff also asserts that the filing of the motions for relief from stay in the Prior Bankruptcy Case constituted acts to collect a debt from the Plaintiff while the automatic stay was in effect (Docket No. 1, ¶ 328).

The automatic stay terminates upon the earliest of (a) the close of the case, the (b) dismissal of the case, or (c) the grant or denial of the individual's discharge. 11 U.S.C. § 362(c)(2)(A)-(C). The Plaintiff received a discharge on February 6, 2019, at which point the automatic stay terminated (Docket No. 1, ¶ 97). The earliest offending communication from the Defendants that the Plaintiff points to with particularity is dated March 20, 2019, after the discharge order was entered and the automatic stay terminated in the Prior Bankruptcy Case (Docket No. 1, ¶ 136). Contrary to the Plaintiff's position, a motion for relief from stay is not an act to collect for purposes of § 362(k). *See, e.g.*, *In re Orian*, No. 9:16-BK-10514, 2018 WL 6187784, at *11 (B.A.P. 9th Cir. Nov. 27, 2018) ("It is well settled that '[t]he automatic stay does not apply to proceedings initiated against the debtor if the proceedings are initiated in the same bankruptcy court where the debtor's bankruptcy proceedings are pending.') (quoting *Snavely v. Miller (In re Miller)*, 397 F.3d 726, 730 (9th Cir. 2005)); *In re Biehl*, No. 6: 13-BK-26277, 2017 WL 1040941, at *4 (Bankr. C.D. Cal. Mar. 13, 2017) (declining to award compensatory damages for an automatic stay violation for creditor's motion to annul the stay, which is "specifically contemplated by the Bankruptcy Code"); *Kesar, Inc. v. Uni-Marts, LLC*

*(In re Uni-Marts, LLC)*, 405 B.R. 113, 129 (Bankr. D. Del. 2009) ("Although the language of section 362(a) suggests that the automatic stay operates against all proceedings, the majority of courts hold that the Code implicitly permits the filing of suit in the bankruptcy court against a debtor without violating the automatic stay.") (internal citation omitted). Therefore, the Plaintiff has failed to state a claim for relief under § 362(k), and the Court will grant the Defendants' Motion as to this cause of action.

### iii. <u>Count Six: Objection to Claim</u>

The Defendants also move to dismiss the Plaintiff's objection to the Proof of Claim, asserting that the Plaintiff "relies on her bare assertions" and fails to rebut the presumptive validity of the Proof of Claim because the only evidence and documents attached to the Complaint "support and affirmatively establish the amounts owed" (Docket No. 32, p. 17).

Federal Rule of Bankruptcy Procedure 3001(f) provides that "[a] proof of claim executed and filed in accordance with [the Federal Rules of Bankruptcy Procedure] shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f); *see also In re Harford Sands Inc.*, 372 F.3d 637, 640 (4th Cir. 2004). "The debtor must introduce evidence to rebut the claim's presumptive validity. If the debtor carries its burden, the creditor has the ultimate burden of proving the amount and validity of the claim by a preponderance of the evidence." *Harford Sands Inc.*, 372 F.3d at 640 (citations omitted).

The Defendants' recounting of the evidentiary burden shifting framework for an objection to claim is correct, but the Defendants fail to appreciate the procedural context presented here. As allowed by Federal Rule of Bankruptcy Procedure 3007(b), the Plaintiff has included her objection to claim in an adversary proceeding. The Defendants "misconstrue the nature" of a motion to dismiss because "[Rule 12(b)(6)] contemplates a pre-discovery examination of the specific allegations in the complaint and allows a defendant to test whether a plaintiff is entitled to relief if everything alleged in the complaint is accepted as true, not whether Plaintiff has garnered enough evidence to present a prima facie case." *Thompson v. AK Steel Corp.*, No. CV 15-41, 2015 WL 7734080, at *2 (E.D. Ky. Nov. 30, 2015). In short, the basis for the Defendants' Motion as to this cause of action is premature in nature, as there is no expectation at this stage that the Plaintiff have sufficient forms of evidence relevant to the merits of the objection to claim. Instead, the determination is whether the pleadings meet the plausibility standard.[4]

In the Complaint, the Plaintiff alleges that, due to the Defendants' misapplication of payments, the Proof of Claim states the Plaintiff owes more than is actually due, contains fees and charges from when the Plaintiff's loan was incorrectly deemed to be in default, and includes fees assessed against the Plaintiff for the foreclosure action that was improperly commenced. Taking the factual allegations of the Complaint as true, the Complaint states sufficient facts to make a

---

[4] The Defendants retain the option to raise, as part of a motion for summary judgment, the argument that the Plaintiff fails to satisfy her evidentiary burden as to the objection to claim. *See, e.g.*, *Eggerson v. U.S. Bank Tr. Nat'l Ass'n (In re Eggerson)*, No. BK18-81307-TLS, 2020 Bankr. LEXIS 871, at *13 (Bankr. D. Neb. Mar. 27, 2020).

plausible showing of entitlement to relief in the Plaintiff's objection to the Proof of Claim. *See Rutledge v. Wells Fargo Bank, N.A. (In re Rutledge)*, 510 B.R. 491, 510 (Bankr. M.D.N.C. 2014).

iv. Counts Three, Four, Five, Seven, Eight, and Nine: FDCPA, RESPA, Vicarious Liability, N.C. Gen. Stat. § 45, Breach of Contract, and Tortious Interference with Contract

The Defendants move to dismiss the remaining causes of action for breach of contract, tortious interference with contract, vicarious liability, and violations of the FDCPA, RESPA, and N.C. Gen. Stat. § 45 (collectively, the "Non-Bankruptcy Claims"). First, the Defendants argue that the Court does not have jurisdiction to hear the Non-Bankruptcy Claims because those causes of action did not arise in and were not related to the Plaintiff's bankruptcy case. Second, the Defendants contend that the Plaintiff fails to allege specific damages she sustained as a result of the purported violations (Docket No. 32, pp. 19–20).

a) *The Court Possesses "Related-to" Jurisdiction Over the Claims at Issue*

Bankruptcy courts may "hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11." 28 U.S.C. § 157(b)(1). A bankruptcy court "may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11," but, absent the consent of the parties, may only submit proposed findings of fact and conclusions of law to the district court for de novo review. 28 U.S.C. § 157(c)(1). A proceeding "arises under title 11" if it is "a cause of action created by the Bankruptcy Code, and which lacks existence outside the context of bankruptcy." *In re Kirkland*, 600 F.3d 310, 316 (4th Cir. 2010). A proceeding "arises in title 11" if it is "not based on any right expressly

created by Title 11, but nevertheless, would have no existence outside of the bankruptcy." *Valley Historic Ltd. P'ship v. Bank of N.Y.*, 486 F.3d 831, 835 (4th Cir. 2007).

To determine whether a claim falls under a bankruptcy court's "related to" jurisdiction, bankruptcy courts in the Fourth Circuit determine whether the outcome of the civil proceeding "could conceivably have any effect on the estate being administered in bankruptcy." *Valley Historic*, 486 F.3d at 836; *see also Gaitor v. U.S. Bank, N.A. (In re Gaitor)*, No 14-09059, 2015 WL 4611183, at *6 (Bankr. M.D.N.C. July 31, 2015). In *Williams,* this Court dismissed the plaintiffs' claims for violations of the FDCPA reasoning that those causes of action arose post-petition and would have no effect on the estate. 612 B.R. at 697–98; *see also Steele v. Ocwen Fed. Bank (In re Steele)*, 258 B.R. 319, 322 (Bankr. D.N.H. 2001) (finding subject-matter jurisdiction for FDCPA claims lacking where "[a]ny recovery on the part of the [debtor-plaintiff] would be his alone and would not inure to the benefit of the bankruptcy estate."). "Related to" jurisdiction "is not so broad as to encompass litigation of claims arising under state law or non-bankruptcy Federal law that will not have an effect on the bankruptcy estate, simply because one of the litigants filed a petition in bankruptcy." *Williams*, 612 B.R. at 697.

The Defendants, relying on *Williams* and similar decisions regarding the limits of bankruptcy court jurisdiction, argue that each of the Plaintiff's Non-Bankruptcy Claims do not arise in and "were not related to the Plaintiff's bankruptcy case" (Docket No. 32, p. 19). Importantly, the Defendants do not specify

to which of the Plaintiff's two bankruptcy cases they are referring. While it may be true that the resolution of the Non-Bankruptcy Claims would have no conceivable impact on the Plaintiff's Prior Bankruptcy Case, the same cannot be said of the Plaintiff's Current Bankruptcy Case. This case is thus distinguishable from *Williams* because the Non-Bankruptcy Claims arose before the petition date in the Plaintiff's Current Bankruptcy Case and are, therefore, property of the current estate. The Plaintiff's Non-Bankruptcy Claims could impact her bankruptcy estate if the Plaintiff ultimately prevails and funds are recovered. *See, e.g.*, *Fuhrman v. Wilmington Sav. Fund Soc'y (In re Fuhrman)*, 596 B.R. 342, 350 (Bankr. E.D. Mich. 2018) (finding "related to" jurisdiction existed with regard to FDCPA claims that arose prepetition); *Turner v. Universal Debt Solutions, Inc. (In re Turner)*, 436 B.R. 153, 157 (M.D. Ala. 2010) (finding that the bankruptcy court has "related to" jurisdiction over a chapter 13 debtor's claim for violation of FDCPA); *Price v. America's Servicing Co. (In re Price)*, 403 B.R. 775, 779 (Bankr. E.D. Ark. 2009) (same). Accordingly, the Court finds that "related to" jurisdiction exists and declines to dismiss the Non-Bankruptcy Claims on that asserted basis.[5]

b)      *The Plaintiff Sufficiently Alleges Actual Damages for the Remaining Claims*

The Defendants' remaining challenge to the Non-Bankruptcy Claims is that the Complaint fails to allege specific damages for each of those causes of action, and,

---

[5] Because the question of whether the parties have consented to entry of a final order or judgment as to the Non-Bankruptcy Claims is not presently before it, the Court reserves any determination as to whether it will enter a final judgment or submit proposed findings of fact and conclusions of law to the District Court for Counts Three, Four, Five, Seven, Eight, and Nine.

in any event, the Defendants promptly corrected any potential errors or payment misapplications.

        i.    <u>FDCPA</u>

In Count Three of the Complaint, the Plaintiff alleges the Defendants violated provisions of the FDCPA. "Congress enacted the FDCPA to eliminate abusive debt collection practices and ensure that debt collectors who refrain from such practices are not competitively disadvantaged." *Dubois v. Atlas Acquisitions LLC (In re Dubois)*, 834 F.3d 522, 526 (4th Cir. 2016). The FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," and from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. §§ 1692e-1692f. Debt collectors who violate the FDCPA are liable for actual damages, including emotional distress damages, as well as statutory damages and attorney's fees. *See Carter v. Countrywide Home Loans, Inc.*, No. 3:07-CV651, 2009 WL 1010851, at *4 (E.D. Va. Apr. 14, 2009) (collecting cases). Moreover, a court may award statutory damages in instances where a plaintiff has pleaded only nominal damages. *Blick v. Shapiro & Brown, LLP*, No. 3:16-CV-00070, 2018 WL 9619432, at *7 (W.D. Va. July 12, 2018), *aff'd*, 748 F. App'x 562 (4th Cir. 2019) (awarding $1 in nominal damages and $1,000 in statutory damages for violations of the FDCPA).

Here, as a result of the purported violations, the Plaintiff seeks actual damages related to the improper assessment of fees and charges, inflating the balance of the mortgage, and referring the Property to foreclosure without allowing

the Plaintiff to make every reasonable effort to cure any delinquency (Docket No. 1, ¶¶ 363, 365, 369, 378, 404). The Plaintiff also seeks permissive statutory damages and attorney's fees for the costs of pursuing the action (Docket No. 1, ¶¶ 405–406). Accordingly, the Court finds the Plaintiff has asserted specific damages related to her FDCPA cause of action and declines to dismiss on that basis.

ii.   <u>RESPA</u>

In Count Four of the Complaint, the Plaintiff alleges the Defendants violated provisions of RESPA. Courts in this District have held that, to adequately plead a claim under 12 U.S.C. § 2605, a plaintiff must allege damages resulting from a RESPA violation. *See Jackson v. MERSCORP, Inc.*, No. 1:12CV1205, 2015 WL 5774181, at *8 (M.D.N.C. Sept. 30, 2015); *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1246 (11th Cir. 2016); *but see Sharma v. Rushmore Loan Mgmt. Servs., LLC*, No. GJH-18-656, 2020 WL 1323007, at *15–16 (D. Md. Mar. 20, 2020) ("Under 12 U.S.C. § 2605(f), an individual plaintiff must plead either actual damages as a result of the RESPA violation or a 'pattern or practice of noncompliance' with RESPA requirements.") (internal quotation omitted). Courts, however, have interpreted the pleading requirement of actual harm liberally. *Shepherd v. Am. Home Mortg. Servs., Inc.*, No. CIV 209-1916 WBS GGH, 2009 WL 4505925, at *4 (E.D. Cal. Nov. 20, 2009). Actual damages may include economic damages as well as emotional distress and pain and suffering so long as there is a "plausible causal connection" alleged between the emotional damages and the alleged RESPA violations. *Id.* at *16; *see also McLean v. GMAC Mortg. Corp.*, 398 F. App'x 467, 471

(11th Cir. 2010). Section 2605(f) also allows for, "in the case of pattern or practice of noncompliance," additional damages in an amount not to exceed $2,000 and an award of costs and attorney's fees in the event of a successful action. 12 U.S.C. § 2605(f)(1), (3).

The Court finds the Plaintiff has stated a claim under RESPA, including any necessary pleading for actual damages. As a result of the purported violations, the Plaintiff seeks actual damages related to the improper assessment of additional fees and charges, unearned interest charges and penalties on the balance of the loan, wrongful cancellation of the Plaintiff's insurance policy, and emotional distress and anxiety stemming from the inaccurate and misleading information provided by Defendants (Docket No. 1, ¶¶ 456–61; 540–50). The Court finds these allegations are sufficiently pleaded for purposes of Rule 12(b)(6). *See, e.g.*, *Hueso v. Select Portfolio Servicing, Inc.*, No. 18-CV-01892, 2021 WL 1102452, at *9 (S.D. Cal. Mar. 23, 2021) ("Plaintiff's allegations that SPS failed to reimburse him for the force-placed insurance premium payments and that he is being charged 'unearned interest and penalties on the balance' of his loan … adequately plead a pecuniary loss flowing from this violation that suffices to state damages [for purposes of RESPA]"). The Plaintiff has asserted a causal link between her fears over how much money was owed on the mortgage along with the concomitant threat of foreclosure and the Defendants' alleged use of inaccurate information and inclusion of unwarranted fees and charges. *See Sharma*, 2020 WL 1323007, at *16. The Plaintiff has also pleaded a pattern or practice of noncompliance with RESPA requirements

on the part of the Defendants (Docket No. 1, ¶¶ 580–88) and seeks statutory damages and attorney's fees for the costs of pursuing the action (Docket No. 1, ¶ 591). *See Renfroe*, 822 F.3d at 1247 (finding plaintiff pleaded five violations of RESPA, which is adequate to plead statutory damages). Accordingly, the Court finds the Plaintiff has asserted specific damages related to her RESPA cause of action and declines to dismiss on that basis.

iii.    <u>North Carolina General Statutes Chapter 45</u>

In Count Seven of the Complaint, the Plaintiff alleges the Defendants violated provisions of Chapter 45, which requires, among other things, payments to be accepted and credited within one business date of the date received, payment errors to be promptly corrected, and fees to be assessed within 45 days of the date the fee was incurred. N.C. Gen. Stat. §§ 45-91(1), 45-91(2), 45-93(3). Section 45-94 prescribes remedies for violations of Chapter 45, stating that, "*[i]n addition to any equitable remedies and any other remedies at law*, any borrower injured by any violation of this Article may bring an action for recovery of actual damages, including reasonable attorneys' fees." N.C. Gen. Stat. § 45-94 (emphasis added). Because Chapter 45 specifically allows for a cause of action seeking only equitable remedies or any other remedies at law, "alleging actual damages is not a necessary element in order to state a claim upon which relief may be granted." *Cole v. Wells Fargo Bank, N.A.*, No. 1:15-CV-00039-MR, 2016 WL 737943, at *12 (W.D.N.C. Feb. 23, 2016). While not required to do so, Plaintiff has nonetheless alleged actual damages such as the inclusion of default-related fees when mortgage payments

were not in default and increased interest that accrued due to those additional fees (Docket No. 1, ¶ 672). Accordingly, the Court finds the Plaintiff has asserted specific damages related to her Chapter 45 cause of action and declines to dismiss on that basis.

iv.   <u>Breach of Contract</u>

In Count Eight of the Complaint, the Plaintiff alleges the Defendants breached the terms of the Loan Modification, Note, and Deed of Trust by assessing late fees to the mortgage when payment was timely received, inaccurately deeming the mortgage in default, and charging costs and fees to enforce the Note when the Plaintiff was not in default (Docket No. 1, ¶¶ 674–717). The essential elements of a breach of contract claim under North Carolina law are (1) the existence of a valid contract and (2) breach of the terms of that contract. *Orban v. Nationwide Tr. Servs., Inc.*, No. 5:12-CV-00016, 2014 WL 6476235, at *7 (W.D.N.C. Nov. 19, 2014) (citing *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000)). Importantly, "North Carolina law indicates that a breach of contract claim may survive [a motion to dismiss] where a technical breach is alleged and at least nominal damages are available." *I.P. ex rel. Newsome v. Pierce*, No. 5:19-CV-228-M, 2020 WL 1976818, at *4 n.2 (E.D.N.C. Apr. 24, 2020). "In a suit for damages for breach of contract, proof of the breach would entitle the plaintiff to nominal damages at least." *Bryan Builders Supply v. Midyette*, 162 S.E. 2d 507, 511–12 (N.C. 1968). The Court finds the Plaintiff has pleaded all required elements for a breach of contract claim and, while not required to do so, has asserted actual damages including the imposition of

29

unwarranted fees and interest (Docket No. 1, ¶ 718). The Court, therefore, declines to dismiss the Plaintiff's cause of action for breach of contract.

v.   <u>Tortious Interference with Contract</u>

In Count Nine of the Complaint, the Plaintiff alleges the Defendants tortiously interfered with the Plaintiff's insurance policy with NC Grange by intentionally misinforming NC Grange that the Plaintiff no longer owned the Property (Docket No. 1, ¶¶ 720–39). A valid cause of action for tortious interference with a contractual relationship requires the following elements: (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to the plaintiff. *Elina Adoption Servs., Inc. v. Carolina Adoption Servs., Inc.*, No. 1:07CV169, 2008 WL 4005738, at *7 (M.D.N.C. Aug. 25, 2008) (citing *Childress v. Abeles*, 84 S.E.2d 176, 181–82 (N.C. 1954)). North Carolina courts have observed that cases asserting a tortious interference with contract cause of action "involved a claim for 'actual monetary damages.'" *Elina Adoption*, 2008 WL 4005738, at *8 (citing *Burgess v. Busby*, 544 S.E.2d 4, 10 (N.C. Ct. App. 2001)).

Here, the Plaintiff asserts the Defendants' actions in misinforming NC Grange created actual damages in the form of loss of insurance coverage, the additional cost of a replacement policy, and financing costs incurred to acquire a more expensive policy (Docket No. 1, ¶¶ 728–37). Construing the Complaint in a

30

light most favorable to the Plaintiff, and with allegations therein that the Plaintiff's former insurance policy has not been reinstated, she has since been paying a higher price for her current policy, and the Defendants have not reimbursed her for the accompanying costs associated with the insurance cancellation, the Court finds the Plaintiff has stated a claim for actual monetary damages due to tortious interference with a contractual relationship. *Cf. Hegedus v. Nationstar Mortg., LLC*, No. 5:17-CV-00053, 2018 WL 1461747, at *13–14 (W.D. Va. Mar. 23, 2018) (dismissing tortious interference claim for failure to allege damages where plaintiffs' insurance was reinstated).  The Court, therefore, declines to dismiss the Plaintiff's cause of action for tortious interference with a contract.

vi.    Vicarious Liability

In Count Five of the Complaint, the Plaintiff alleges that Defendant Fannie Mae is vicariously liable for acts of its servicing agents, Seterus and Mr. Cooper. The Plaintiff alleges that Fannie Mae consented, both expressly and impliedly, to Seterus and Mr. Cooper acting on its behalf as servicers pursuant to servicing agreements, which the Plaintiff asserts is sufficient to establish a principal-agent relationship (Docket No. 1, ¶¶ 592–625). The Plaintiff alleges that Fannie Mae is thus vicariously liable for actual damages, attorney's fees, and costs stemming from the actions of its agents Seterus and Mr. Cooper.

"[T]raditional vicarious liability rules ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment." *Meyer v. Holley*, 537 U.S. 280, 285 (2003). An

31

agency relationship "arises when parties manifest consent that one shall act on behalf of the other and subject to his control." *Bauer v. Douglas Aquatics, Inc.*, 698 S.E.2d 757, 764 (N.C. Ct. App. 2010) (quoting Miller v. Piedmont Steam Co., 528 S.E.2d 923, 926 (N.C. Ct. App. 2000)). "Moreover, in establishing the existence of an actual agency relationship, the evidence must show that a principal actually consents to an agent acting on its behalf." *Bauer*, 698 S.E.2d at 764 (quoting *Phillips v. Restaurant Mgmt. of Carolina, L.P.*, 552 S.E.2d 686, 695 (N.C. Ct. App. 2001)).

In the Motion, the Defendants do not dispute that Seterus and Mr. Cooper were agents of Fannie Mae or that an agency relationship existed. Akin to their arguments on the other Non-Bankruptcy Claims, the Defendants assert the cause of action for vicarious liability must also be dismissed because the Plaintiff failed to allege specific damages (Docket No. 32, pp. 19-20). Under North Carolina law, a principal may be vicariously liable for both compensatory and punitive damages based on its agent's tortious acts. *Watson v. Dixon*, 532 S.E.2d 175, 177–79 (N.C. 2000). As the Court has already determined that the Plaintiff sufficiently pleaded damages relating to the Non-Bankruptcy Claims, as well as the cause of action for violation of the discharge injunction, the Court finds the Plaintiff has thereby pleaded specific damages for purposes of its vicarious liability cause of action as well. The Court, therefore, declines to dismiss the cause of action on this basis.[6]

---

[6] The Court notes the jurisdictional split regarding whether defendant mortgage owners may be held vicariously liable for mortgage servicers' RESPA violations. *See Benner v. Wells Fargo Bank, N.A.*, No. 2:16-CV-00467, 2018 WL 1548683, at *14–15 (D. Me. Mar. 29, 2018) (collecting cases). As the

CONCLUSION

For the reasons stated, the Plaintiff has alleged sufficient facts, viewed in a light most favorable to the Plaintiff, that allow the Court to draw the reasonable inference that the Defendants' actions constitute violations of the discharge injunction under § 524(i), RESPA, the FDCPA, and N.C. Gen. Stat. § 45. The Plaintiff further meets the pleading standards required for an objection to claim and for causes of action for breach of contract, tortious interference, and vicarious liability. Conversely, the Plaintiff has not stated a claim for relief under 11 U.S.C. § 362(k), and the Defendants' motion to dismiss must be granted as to that cause of action.

Accordingly, IT IS HEREBY ORDERED that the Defendants' motion to dismiss Count Two of the Complaint for violations of the automatic stay under 11 U.S.C. § 362(k) is GRANTED.

IT IS FURTHER ORDERED that the Defendants' motion to dismiss Counts One, Three, Four, Five, Six, Seven, Eight, and Nine is DENIED.

**END OF DOCUMENT**

---

Defendants have not raised this argument, the Court declines, at this time, to consider whether vicarious liability is possible under RESPA.

# PARTIES TO BE SERVED

## Swink v. Federal National Mortgage Association et al

## 20-06193

Joseph J. Vonnegut, Federal National Mortgage Association
via cm/ecf

Claire Collins Dickerhoff, Federal National Mortgage Association
via cm/ecf

William P. Miller, Bankruptcy Administrator
via cm/ecf

Kristen Scott Nardone, Tamara Lynn Swink
via cm/ecf

Kathryn L. Bringle, Chapter 13 Trustee
via cm/ecf